IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
PALM BEACH DIVISION

LOUIS DIFRANCO

   Plaintiff,

-vs-

OCWEN LOAN SERVICING, LLC,

   Defendant.

_____/

CASE NO.:

**JURY TRIAL DEMANDED**

## COMPLAINT

The Plaintiff, LOUIS DIFRANCO, sues the Defendant, OCWEN LOAN SERVICING, LLC, and in support thereof respectfully alleges the following:

### JURISDICTION AND VENUE

1. Plaintiff brings this action to recover statutorily prescribed damages for acts on the part of Defendant OCWEN LOAN SERVICING, LLC, in violation of the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227, *et seq.*, (hereafter "TCPA").

2. Jurisdiction of this Court arises under 28 U.S.C. § 1331 as this case presents a federal question.

3. Venue is appropriate with this Court under 28 U.S.C. §1391(b), as it is the judicial district in which the Defendant resides and transacts business.

### PARTIES

4. Plaintiff, LOUIS DIFRANCO, is and was at all material times a natural person over the age of eighteen (18), who resides in Philadelphia, Pennsylvania.

5. Plaintiff, LOUIS DIFRANCO, is the regular user, carrier and subscriber of the cellular telephone numbers at issue, (###) ###-0333 and (###) ###-6569, and is the "called party"

with respect to the calls placed by the Defendant that give rise to this action, as further described herein. See Breslow v. Wells Fargo Bank, N.A., 755 F.3d 1265, 1266, 1267 Communications Reg. (P & F) 934, (11th Cir.2014); Soppet v. Enhanced Recovery Co., LLC, 679 F.3d 637, 643 (7th Cir. 2012).

6. Defendant OCWEN LOAN SERVICING, LLC, (hereafter "OCWEN") is and was at all material times a foreign limited liability company organized under the laws of the state of Delaware and authorized to transact business in the state of Florida. OCWEN maintains a registered agent for service of process in Florida and maintains its principal place of business at 1661 Worthington Road, Ste 100, West Palm Beach, FL 33409.

**PERSONAL JURISDICTION**

7. This Court possesses specific personal jurisdiction over OCWEN as a result of its acts within this District that violated the TCPA.

8. OCWEN maintains sufficient minimum contacts with this District, has purposefully availed itself of the privilege of doing business in this District, maintains a registered agent and principal place of business in Florida, and possesses such a significant and continuous presence in this District such as to be subject to the personal jurisdiction of this Court.

9. In addition, Plaintiff's injuries alleged in this action arise from OCWEN's mortgage loan servicing activities in Florida, and result from OCWEN's tortious conduct in performing said activities within Florida, in violation of the TCPA.

**FACTUAL ALLEGATIONS**

10. At all times material hereto, Defendant OCWEN sought to collect an alleged mortgage loan debt from Plaintiff LOUIS DIFRANCO that gave rise to the injuries for which Plaintiff seeks redress against OCWEN through this action.

11. At all times material hereto, Defendant OCWEN was the "master servicer" of a mortgage loan owed by Plaintiff, for which U.S. Bank, N.A. ("U.S. Bank") was at all material times the purported assignee and trustee.

12. In the later part of 2015, Defendant, OCWEN began initiating a campaign of autodialed calls ("robocalls") to Plaintiff's aforementioned cellular telephone numbers, (###) ###-0333 and (###) ###-6569, in an effort to collect the above described alleged mortgage loan debt.

13. On or about August 1, 2017, Plaintiff filed a Voluntary Petition for bankruptcy pursuant to Chapter 13 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Pennsylvania, styled: In re: Louis DiFranco, Case No. 17-bk-15225-KRM, United States Bankruptcy Court, Eastern District of Pennsylvania (hereafter the "Subject Bankruptcy Action") (Bankruptcy Dkt. 1),[1] pertaining to certain debts, including but not limited to the subject alleged mortgage debt.

14. On August 29, 2017, Plaintiff filed his Schedules A/B, identifying the subject alleged mortgage debt, and identifying both the trustee, U.S. Bank, and identifying OCWEN's aforementioned business address, as the creditor of said debt (Bankruptcy Dkt. 12).[2]

15. On September 5, 2017, a Meeting of Creditors Notice (Form 309I) was filed in the Subject Bankruptcy Action (Bankruptcy Dkt. 16), which stated that the Meeting of Creditors was scheduled to take place on October 11, 2017, and established a December 10, 2017 deadline for creditors to object to the debtor's discharge or to challenge dischargeability of certain debts, a January 9, 2018 deadline for creditors to file a proof of claim, and established the deadline to

---

[1] A copy of the Bankruptcy Petition is attached hereto as Exhibit "A."

[2] A copy of the Schedules are attached hereto as Exhibit "B." See pg. 18-19.

3

Object to Exemptions as thirty (30) days after the conclusion of the Meeting of Creditors. The Notice further states as follows, in relevant part: [3]

> ***The filing of the case imposed an automatic stay against most collection activities***. This means that creditors generally may not take action to collect debts from the debtors, the debtors' property, and certain codebtors. ***For example, while the stay is in effect, creditors cannot*** sue, garnish wages, assert a deficiency, repossess property, or otherwise ***try to collect from the debtors***. ***Creditors cannot demand repayment from debtors by mail, phone, or otherwise***. Creditors who violate the stay can be required to pay actual and punitive damages and attorney's fees.

Id. (emphasis added).

16. On September 8, 2017, a Certificate of Notice was filed (Bankruptcy Dkt. 17) identifying that the aforementioned Meeting of Creditors Notice was sent by the Bankruptcy Noticing Center to U.S. Bank, via OCWEN at its aforementioned business address, by way of first class mail on September 8, 2017.[4]

17. The Subject Bankruptcy Action was terminated on January 17, 2019.

18. Pursuant to 11 U.S.C. § 362(a), the filing of a Voluntary Petition for bankruptcy pursuant to Chapter 13 of the Bankruptcy Code "operates as a stay, applicable to all entities, of," in relevant part, "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case[.]"[5] The stay remains in effect during the pendency of a bankruptcy proceeding unless a party seeking relief from the stay files a motion with the bankruptcy court requesting such relief, which may only be granted, after notice and a hearing, under the circumstances set forth under 11 U.S.C. § 362(d).

19. Neither OCWEN, nor the assignee/trustee of the alleged subject mortgage debt, U.S. Bank, ever filed a motion for relief from the stay in the Subject Bankruptcy Action.

---

[3] A copy of the Meeting of Creditors Notice is attached hereto as Exhibit "C."

[4] A copy of the Certificate of Notice is attached hereto as Exhibit "D."

[5] Purusuant to 11 U.S.C. § 301(b), the commencement of such case "constitutes an order of relief under such chapter."

4

Nevertheless, OCWEN continued to engage in its campaign of autodialed collection calls to Plaintiff's cellular telephone during the pendency of the Subject Bankruptcy Action, despite notice of its pendency and despite the imposition of the stay prohibiting telephonic collection efforts.

20.     Throughout the course of the telephone collection campaign described herein, Plaintiff consistently and repeatedly instructed OCWEN's representatives to cease calling him on his cellular telephone numbers, and further advised OCWEN's representatives of the pendency of the Subject Bankruptcy Action, and that he was represented by an attorney with respect to the subject alleged debt.

21.     Despite Plaintiff's clear and unambiguous instructions to OCWEN's representatives to stop calling, Defendant OCWEN continued undeterred in its campaign of initiating autodialed calls to Plaintiff's cellular telephone numbers in an effort to collect the above described alleged debt, disregarding Plaintiff's instructions to cease placing such calls, and disregarding the statutory court-imposed stay prohibiting such collection efforts, in violation of the TCPA.

22.     Defendant OCWEN intentionally harassed and abused Plaintiff on numerous occasions by and through its agents and representatives during the time period prior to the filing of the Complaint in this action, including but not limited to:

   a. Calling Plaintiff's cellular telephone numbers several times per day and on back to back days, with such frequency as can reasonably be expected to harass the Plaintiff.

   b.  Calling Plaintiff's cellular telephone numbers in an attempt to collect the subject debt after Plaintiff demanded that Defendant cease calling;

   c. Calling Plaintiff's aforementioned cellular telephone numbers and hanging up either prior to or as soon as Plaintiff, or the Plaintiff's answering machine answered the call.

23. Despite Plaintiff's instructions to OCWEN to stop placing calls to his aforementioned cellular telephone numbers, Defendant OCWEN, in an effort to collect the above described alleged debt, proceeded to engage in conduct in violation of the TCPA, as described herein.

24. The telephone calls at issue were placed by Defendant OCWEN using an "automated telephone dialing system" as defined by the TCPA, 47 U.S.C. § 227(a)(1), which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers (hereafter "ATDS" or "autodialer"). Specifically, Defendant initiated each of the calls at issue to Plaintiff's aforementioned cellular telephone numbers using the "Aspect" dialing system, which at all material times consisted of server-based computer hardware that that included an inherent random number generator, paired with software that utilized the computer hardware's random number generator functions in order to store and produce the numbers that were dialed by the "Aspect" dialing system, including the calls at issue to Plaintiff's cellular telephone numbers. As such, the "Aspect" dialing system possessed at all material times the inherent and present capacity to operate as an ATDS as defined by the TCPA, and also had the capacity to function as a "predictive dialer." Moreover, Ocwen has stipulated to Courts in Florida, including during a trial involving similar violations of the TCPA, that its "Aspect" dialing system is objectively an autodialer as defined by the TCPA.[6]

25. During the relevant time period prior to the filing of this Complaint, Defendant OCWEN placed hundreds of autodialed calls to Plaintiff on his aforementioned cellular telephone numbers.

---

[6] See Exhibit "E" hereto, excerpt of trial transcript in Drew v. Ocwen, No. 8:14-cv-369-RAL-TGW (M.D. Fla. September 21, 2015), before the Honorable Richard A. Lazarra, p. 16:17 to 17:9.

26.     The calls at issue from OCWEN continued into the four (4) year period prior to the filing of this Complaint. Additionally, the statute of limitations under the TCPA was tolled prior to Plaintiff timely opting out of the settlement class in a certified class action case filed in the Northern District of Illinois, Snyder v. Ocwen Loan Servicing, LLC, Civ. No.14-08461 (N.D. Ill. 2017), in which Plaintiff was at all times a member of the defined settlement class, pursuant to American Pipe & Construction Co. v. Utah, 414 U.S. 538 (1974). See also Shelly Christianson v. Ocwen Loan Servicing, LLC, No: 0:17-cv-1525, 2018 WL 4283577, at *1 (D. Minn. Sept. 7, 2018). As such, any calls that were initiated by Defendant to Plaintiff's aforementioned cellular telephone numbers after October 27, 2010 are subject to liability under the TCPA. A copy of Plaintiff's opt-out letter is attached hereto as Exhibit "F," and a copy of the Declaration of the Settlement Administrator in the Snyder action, attaching the list of individuals excluded from the Snyder class, which includes Plaintiff's name, is attached hereto as Exhibit "G."

27.     That Defendant OCWEN used an "automatic telephone dialing system" to place the calls at issue is further evidenced by the fact that on at least some of the answered calls, Plaintiff was greeted by a long pause of unnatural silence and/or an audible click/beep prior to a live representative joining the line. These are telltale signs of an automated telephone dialing system.

28.     Defendant OCWEN initiated each of the calls at issue to Plaintiff's aforementioned cellular telephone numbers without the "prior express consent" of Plaintiff as specified by the TCPA, 47 U.S.C. § 227(b)(1)(A).

29.     Alternatively, Defendant OCWEN initiated each of the calls at issue to Plaintiff's aforementioned cellular telephone numbers subsequent to Plaintiff's revocation of any "prior express consent" Plaintiff may have previously provided to Defendant OCWEN, or that OCWEN mistakenly believed it had.

30. Each of Defendant's unwanted robocalls occupied Plaintiff's cellular telephone line, even when the call was not answered, rendering the line unavailable for Plaintiff to place outbound calls and creating a material safety risk by making the line unavailable for emergency use. Plaintiff considered Defendant's campaign of unwanted robocalls to be intrusive, harassing and an invasion of his right to privacy.

31. Additionally, none of the telephone calls at issue were placed by Defendant OCWEN to Plaintiff's aforementioned cellular telephone numbers for "emergency purposes" as specified by the TCPA, 47 U.S.C. §227 (b)(1)(A).

32. Defendant OCWEN consents of and has knowledge and control of the collection activities of its agents and representatives, including supervisors, managers, affiliates, subsidiaries, divisions, employees, servants, partners, agents, vendors, assignees, transferees, collectors and/or contractors with respect to the collection activity alleged herein.

33. Defendant OCWEN has a corporate policy of using an automatic telephone dialing system and/or a pre-recorded or artificial voice message, just as it did when initiating the calls at issue to the Plaintiff's cellular telephone number, as described herein.

34. Defendant OCWEN willfully and/or knowingly violated the TCPA with respect to the Plaintiff.

35. Despite having actual knowledge of its wrongdoing, Defendant OCWEN continued the campaign of harassment and abuse.

36. Defendant OCWEN'S corporate policy is structured to continue to call individuals like the Plaintiff, despite its lack of consent to place the calls, and despite the called parties' requests that OCWEN stop calling.

37. Defendant OCWEN'S corporate policy provided no means for the Plaintiff to have his numbers removed from the call list.

38. Defendant OCWEN followed its corporate policies when attempting to communicate with the Plaintiff in an effort to collect the alleged debt described herein.

39. Defendant OCWEN has been the recipient of numerous complaints from debtors, alleged debtors, and non-debtors across the country, similar to those alleged in this action by Plaintiff.

40. Defendant OCWEN has or should be in possession and/or control of call logs, account notes, auto dialer reports and other records that detail the exact number of calls made to Plaintiff over the course of the relevant time period.

41. As a direct and proximate result of Defendant's acts or omissions, as set forth herein, Plaintiff has suffered compensatory, statutory and actual damages in the form of emotional distress, anxiety, fear, worry, embarrassment and mental suffering, pain, anguish, and loss of capacity for the enjoyment of life.

42. All conditions precedent to the filing of this action have occurred or have otherwise been waived.

## COUNT I
## VIOLATION OF THE TCPA AGAINST OCWEN

43. Plaintiff re-alleges and incorporates by reference the allegations of Paragraphs (1) through (34), as if fully set forth herein, and further alleges as follows:

44. None of the calls at issue were placed by Defendant OCWEN to Plaintiff's aforementioned cellular telephone numbers with the "prior express consent" of Plaintiff, as specified by the TCPA, 47 U.S.C. § 227(b)(1)(A).

45. Alternatively, Plaintiff revoked any "prior express consent" Defendant OCWEN had or mistakenly believed it had by verbally instructing Defendant to stop placing calls to his cellular telephone numbers.

46. Additionally, none of the calls at issue were placed by Defendant OCWEN to Plaintiff's cellular telephone numbers for "emergency purposes" as specified by the TCPA, 47 U.S.C. §227 (b)(1)(A).

47. Defendant OCWEN willfully and/or knowingly violated the TCPA with respect to Plaintiff LOUIS DIFRANCO by repeatedly placing non-emergency calls to Plaintiff's aforementioned cellular telephone numbers using an automatic telephone dialing system and/or prerecorded or artificial voice message without Plaintiff's prior express consent, and after Plaintiff instructed Defendant to cease calling, and in violation of the automatic stay prohibiting such telephonic collection activity during the pendency of the Subject Bankruptcy Action, as specifically prohibited by the TCPA, 47 U.S.C. §227(b)(1)(A)(iii).

48. The TCPA provides Plaintiff with a private right of action against Defendant OCWEN for its violations of the TCPA, as described herein, pursuant to 47 U.S.C.A. § 227(b)(3), and permits both injunctive relief and recovery of statutory damages.

WHEREFORE, Plaintiff LOUIS DIFRANCO respectfully demands judgment against Defendant OCWEN for statutory damages, actual damages, costs, interest, an injunction from further violations of these parts, and for such other relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury of all issues so triable.

Respectfully submitted,

*/s/David P. Mitchell*
David P. Mitchell, Esq.

        Florida Bar No. 067249
        MANEY & GORDON, P.A.
        101 East Kennedy Blvd., Suite 1700
        Tampa, Florida 33602
        Telephone: (813) 221-1366
        Fax: (813) 223-5920
        David@MitchellConsumerLaw.com
        Counsel for Plaintiff